IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ADVANCED REHAB AND MEDICAL, P.C.,

      Plaintiff,

v.                                               No. 1:17-cv-01149-JDB-jay

AMEDISYS HOLDING, LLC,

      Defendant.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
---

Before the Court is the September 21, 2018, motion of Plaintiff, Advanced Rehab and Medical, P.C. ("Advanced"), for class certification, pursuant to Fed. R. Civ. P. 23(a) and (b)(3). (Docket Entry ("D.E.") 61.) Advanced initiated this action on August 4, 2017, against Defendant, Amedisys Holding, LLC ("Amedisys"), and other parties, alleging violations of the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), stemming from faxes Amedisys transmitted to Plaintiff. (D.E. 1.)[1] In this putative class action, Advanced seeks to join all similarly situated plaintiffs via this motion for class certification. Defendant responded to the filing, (D.E. 67), to which Plaintiff replied, (D.E. 71).

## BACKGROUND

Advanced alleges that, between November 23, 2015, and July 13, 2017, Amedisys, a Louisiana limited liability company that provides in-home health care services, sent it unsolicited faxes in an effort to facilitate referrals. (D.E. 32 ¶¶ 10, 12, Ex. A; D.E. 61-1 at PageID 439.)

---

[1] On January 31, 2018, Plaintiff amended its complaint to remove all defendants other than Amedisys. (D.E. 32.)

Plaintiff avers that a total of 216,897 similar faxes were sent to the proposed class of plaintiffs. (D.E. 61-1 at PageID 439.)

On April 27, 2018, Defendant filed a motion for partial summary judgment. (D.E. 43.) In its supporting memorandum, Amedisys explained that only persons who had provided at least two referrals within a twelve-month period received faxes, and, furthermore, each of those documents contained an opt-out notice that complied with the TCPA's requirements. (D.E. 44.) Defendant sought summary judgment on the issues of (1) whether the opt-out notice was clear and conspicuous; (2) whether the notice set forth the requirements for a proper opt-out request as set forth in 47 U.S.C. § 227(b)(2)(D)(iii) & (E); and (3) whether the notice complied with the requirements of § 227(d). (D.E. 56 at PageID 422.) On August 15, 2018, the Court granted Defendant's motion, in part, holding that the opt-out notice (1) was clear and conspicuous as a matter of law; and (2) complied with the statutory requirements of § 227(b)(2)(D)(iii), (E)(i) & (ii)[2]. (D.E. 56 at PageID 422–27.)

Because of a lack of argument from Defendant, the Court denied summary judgment as to (1) the compliance of the opt-out notice with respect to § 227(b)(2)(E)(iii); and (2) whether the timestamp at the top of the faxed document satisfied the statute's directive under § 227(d)(1)(B). (D.E. 56 at PageID 427–28.) As will be discussed further, Amedisys's October 22, 2018, response to Advanced's motion for class certification revisits these issues at length.

In response to Plaintiff's subsequent motion for class certification, Defendant filed a thirty-three-page brief. (D.E. 67.) Much of the document, however, does not directly address the issue

---

[2] Clause (b)(2)(D)(iii) requires the opt-out notice to provide the requirements for a compliant opt-out request as set forth in subparagraph (b)(2)(E). Clauses (b)(2)(E)(i) & (ii) obligate the recipient who requests to opt out of future facsimiles to include its telephone number associated with the fax and to do so to the telephone or facsimile number of the sender of the advertisement.

of class certification, but is, rather, devoted to arguments that are collateral to that question. First, Amedisys contends that Advanced lacks standing because of an absence of damages that are traceable to the receipt of the facsimiles in controversy. (*Id.* at PageID 5981–84.) Next, the brief implores the Court to consider matters that "should be addressed prior to class certification," which Defendant insists were raised in its motion for summary judgment. (*Id.* at PageID 5984–91.) Finally, Amedisys proceeds to challenge the merits of Plaintiff's motion. (*Id.* at PageID 5991–6003.) The Court will address these arguments in turn.

## STANDING

The United States Constitution vests the judiciary with the limited powers of hearing only "Cases" and "Controversies" but does not define the scope of those terms. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (quoting U.S. Const. art. III, § 2). Thus, it has been left to the courts to determine what cases are justiciable within the meaning of the Constitution and to delimit what party has the proper standing to bring those cases. *Id.* at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Over time, precedent has "established that the irreducible constitutional minimum of standing contains three elements": (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal citations and quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing

these elements," which, at the motion-to-dismiss stage,[3] is accomplished by "general factual allegations of injury resulting from the defendant's conduct." *Id.* at 561.

Defendant asserts that Plaintiff lacks standing, because it lacks concrete damages that are traceable to the receipt of the faxes at issue. (D.E. 67 at PageID 5981.) Amedisys relies heavily on the Eighth Circuit's decision in *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500 (8th Cir. 2018). In that case, the defendant challenged the plaintiff's standing to sue under the TCPA where the plaintiff had received several unsolicited faxes that contained an allegedly deficient opt-out notice. *Id.* at 501–03. The court found that the plaintiff lacked Article III standing on two grounds. First, because the plaintiff conceded that it may have consented to the faxes, the harm it allegedly suffered—use of paper and toner, occupation of its phone lines, and invasion of privacy—could not be traced to the non-compliant opt-out notice on the faxes. *Id.* at 504. Second, the court held that the deficiency in the opt-out notice alone was not enough to establish an actual harm or create a risk of real harm. *Id.* at 504–05. The court reasoned that because "all twelve faxes contained a box that the recipient could check if he did not wish to receive future faxes, and a domestic fax number to which the form could be returned," the technical deficiencies alone were not a concrete enough error. *Id.* Furthermore, the plaintiff had not attempted to opt out of the faxes. *Id.* Applying the Eighth Circuit's reasoning to this case, Defendant contends that the gravamen of Plaintiff's case amounts to a "bare procedural violation" by Amedisys, and because Advanced did not attempt

---

[3] Although set forth as an argument in the response to a motion for class certification, the state of the litigation is best characterized as the motion-to-dismiss stage, as opposed to the summary-judgment stage, where the burden on the non-movant would be greater. *See Lujan*, 504 U.S. at 561 (discussing the difference between the burdens). Generally, the Court will not entertain what are essentially motions embedded in responsive briefs, *see infra* (declining to consider collateral issues to motion for class certification), but standing is a jurisdictional issue that "can be raised at any point" in the lawsuit. *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016).

to opt out, it suffered no real harm. (D.E. 67 at Page 5984.) Defendant also points out that Plaintiff has produced only two actual faxes and has not yet calculated its damages in this regard. (*Id.*)

The critical difference between *St. Louis Heart* and this case is that Advanced presents the position that the advertisements at issue were unsolicited. (D.E. 71 at PageID 6330; D.E. 32 ¶ 1.) Thus, its reasoning for suing cannot be reduced to the bare procedural violation that was the essence of the plaintiff's action in *St. Louis Heart*. Furthermore, Sixth Circuit precedent directly addresses the thrust of Amedisys's argument. In *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015), the court considered a case where plaintiffs had received unsolicited faxes from a small, family-owned restaurant who had contracted a bulk faxing business to advertise for it. In holding that the plaintiff had standing, the court acknowledged that, with the enactment of the TCPA, Congress intended to provide a remedy for the harms of "the cost of paper and ink, the difficulty the recipient's telephone line being tied up, and the stress on the switchboard systems." *Id.* at 633. Because of the intangible harms accounted for by the statute, the court also noted that a plaintiff could still have standing whether it had printed the faxes or not. *Id.*; *see also Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 544–45 (6th Cir. 2014) ("But unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce."). This is precisely the harm Plaintiff alleges it has suffered, (D.E. 32 ¶ 3), and Defendant's arguments to the contrary cannot overcome Sixth Circuit precedent.[4] Thus, Advanced has standing to proceed.

---

[4] The Court recognizes that the status of the law regarding standing conferred by statute is in flux after the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), at both the circuit level, *see, e.g., Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458 (6th Cir. 2019) (relying on *Spokeo* in finding that the plaintiff lacked standing where a company violated the Fair Credit Reporting Act, but he was unharmed), and the Supreme Court, *see, e.g., Frank v. Gaos*, 139 S. Ct.

## ISSUES PREVIOUSLY RAISED IN MOTION FOR SUMMARY JUDGMENT

Amedisys's next contention is that the Court should reconsider the two issues left undecided in its order partially granting summary judgment. This is essentially a motion for revision thinly cloaked as an argument. In this Court, such motions are to be filed separately on the docket, so that they may receive proper consideration by the Court and the other parties. *See* Local Rule 7.2. Furthermore, Local Rule 7.3(b) states:

> A motion for revision must specifically show: (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

Defendant has failed to demonstrate any of these three instances in its request for reconsideration. Instead Amedisys violates Local Rule 7.3(c), which prohibits parties from repeating written arguments made in prior motions. Accordingly, the Court declines to consider any of these arguments in their present procedural posture.

## CLASS CERTIFICATION

The Court now turns to the initial objective of Plaintiff's motion: the certification of its class.

---

1041 (2019) (relying on *Spokeo* and remanding case to Ninth Circuit for determination as to whether the plaintiffs lacked standing in a class action suit brought under the Stored Communications Act). However, as noted, this case falls squarely within the parameters set forth by the Sixth Circuit in *Imhoff*, and, absent its direct reversal, a district court is not the venue for abrogation of Sixth Circuit precedent. *See United States v. Wehunt*, 230 F. Supp. 3d 838, 846 (E.D. Tenn. 2017) (internal quotation marks and citations omitted) ("If . . . [an] intervening decision neither expressly nor implicitly overrules the prior Sixth Circuit decision, this Court must be extremely careful in concluding that circuit precedent is no longer good law, and should only deviate from such authority where it is powerfully convinced that the circuit will overrule itself at the next available opportunity.").

*Legal Standard*

Advanced seeks class certification under Fed. R. Civ. P. 23(a) and (b)(3). "A district court has broad discretion to decide whether to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). "To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b). A failure on either front dooms the class." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945–46 (6th Cir. 2011). "The plaintiffs carry the burden to prove that the class certification prerequisites are met . . . ." *In re Whirlpool Corp.*, 722 F.3d at 851. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[I]f [the] plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23 . . . ." Alan Wright, et al., *Federal Practice and Procedure* § 1759 (3d ed. Update Apr. 2018) (citing *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007)).

"The Supreme Court's recent opinions in *Amgen* and *Dukes* now clarify that some inquiry into the merits may be necessary to decide if the Rule 23 prerequisites are met." *In re Whirlpool Corp.*, 722 F.3d at 851 (citations omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013); *Dukes*, 564 U.S. 338. At the class-certification stage, however, district courts must constrain themselves to consideration of the merits only insofar as it is relevant to the certification decision. "In other words, district courts may not 'turn the class certification

proceedings into a dress rehearsal for the trial on the merits.'" *In re Whirlpool Corp.*, 722 F.3d at 851–52 (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012)). For purposes of class certification, the Court must conduct a "rigorous analysis" of the petition to ensure that all Rule 23 prerequisites are fully met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012). Regarding TCPA claims specifically, the Seventh Circuit has noted that "[c]lass certification is normal . . . because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

*Threshold Questions*

Before examining Rule 23's requirements, the Court must make two threshold determinations. First, the Court must ensure that an identifiable "class" exists. *See* Wright, et al., *supra*, § 1760; *see also In re Wal-Mart ATM Fee Notice Litigation*, 2015 WL 6690412, at *5 (W.D. Tenn. Nov. 3, 2015). This requires that "the class definition . . . be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537–38 (citations omitted). "[T]he size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification." *Id.* at 539–40 (citing *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001); *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009); *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 250 (W.D. Pa. 2008)). Second, the Court must "determine whether the named representative party is a member of the class that party purports to represent." Wright, et al., *supra*, § 1761; *see also Faralli v. Hair Today, Gone Tomorrow*, 2007 WL 120664, 2007 U.S. Dist. LEXIS 1977, at *13 (N.D. Ohio Jan. 10, 2007) ( "[T]he named representative must

be a member of the class.").  "In the context of the TCPA, where fax logs have existed listing each successful recipient by fax number, our circuit has concluded that such a 'record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017) (quoting *Am. Copper & Brass, Inc.*, 757 F.3d at 545).

Plaintiff identifies its putative class members as the owners or users of the phone numbers identified in the fax logs it filed under seal with the Court.  (D.E. 61-1 at PageID 450; D.E. 62-1.) Advanced asserts that the persons associated with those numbers received one of the nineteen subject faxes encompassed by the class definition, (D.E. 61-1 at PageID 450), and that it received faxes itself.  (D.E. 32 ¶¶ 12, 14.)  Amedisys makes no argument that the class cannot be ascertained, and, because *Sandusky* makes clear that this type of data satisfies the requirement, the Court finds that the class is ascertainable and Plaintiff is a member of that class.

### Rule 23(a) Requirements

Under Fed. R. Civ. P. 23(a), the Court may certify a class only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

"These four requirements—numerosity, commonality, typicality, and adequate representation— serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members."  *In re Whirlpool Corp.*, 722 F.3d at 850 (citing *Dukes*, 564 U.S. 338).  Defendant concedes numerosity but argues that Plaintiff has failed to demonstrate the other three prerequisites.  The Court will address each in turn.

*(1) Numerosity*

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976) (citing *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970)); *see also Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (citation omitted).

In this case, Plaintiff contends that more than 6,000 possible plaintiffs received one of the nineteen fax broadcasts at issue. (D.E. 61-1 at PageID 451.) As previously mentioned, Defendant does not argue that Advanced has failed to satisfy the numerosity requirement. Considering the potential for numerous plaintiffs and Amedisys's lack of argument to refute this, the Court finds that joinder in this case would be impracticable. Thus, Plaintiff has satisfied the numerosity requirement of Rule 23(a)(1).

*(2) Commonality*

Rule 23(a) next requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Despite Rule 23(a)(2)'s plural usage, the Sixth Circuit has stated that the Rule "simply requires *a* common question of law or fact." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (emphasis in original) (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993)); *see also In re Am. Med. Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996) (citations

omitted) ("The commonality test 'is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class.'"). However, this standard does not mean that "every common question . . . will suffice." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). The Court is "looking for . . . a common issue [that] the resolution of which will advance the litigation." *Id.* The class's "claims must depend upon a common contention . . . . [t]hat . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Advanced contends that it has satisfied this element by raising four questions common to all class members:

> (1) whether the Faxes are "advertisements" as defined by the TCPA, 47 U.S.C. § 227(a)(5), and the FCC regulations, 47 C.F.R. § 64.1200(f)(1); (2) whether Defendant is a "sender" of the Faxes pursuant to FCC regulations, 47 C.F.R. § 64.1200(f)(10); (3) whether Defendant can show that it had "prior express invitation or permission" to send the Faxes; and (4) whether the Faxes contain a compliant opt-out notice such that Defendant can avail itself of the EBR "safe harbor," an affirmative defense.

(D.E. 61-1 at PageID 452.) These issues, Plaintiff argues, "can be resolved in one fell swoop as to the entire class." (*Id.*)

Amedisys, however, claims that commonality does not exist in this case, because it "has established that each recipient of its facsimile transmissions was added to the distribution list after sending at least two . . . referrals that were actually admitted by Amedisys within a [twelve]-month period." (D.E. 67 at PageID 5993.) Therefore, "[t]he development and resolution of [the statutory established business relationship ("EBR")] defense will be specific to each individual recipient." (*Id.*)

As previously set forth, the question of commonality only requires that there be a question common to the class that will "advance the litigation." *Sprague*, 133 F.3d at 397. Plaintiff has sufficiently outlined four such questions in its memorandum of law, and Defendant has not refuted these propositions.[5] Thus, Advanced has demonstrated commonality.

*(3) Typicality*

Third, Rule 23(a) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.13, at 3–76 (3d ed. 1992)).

Advanced asserts that Defendant's course of conduct giving rise to the putative class's claims was "identical," because it consisted of "sending the same [f]axes," which is the basis of their shared legal theory. (D.E. 61-1 at PageID 453.)

Amedisys again avers that potential complications arising from its EBR defense will disrupt the class's typicality. (D.E. 67 at PageID 5994.) Defendant also contends that, because some faxes may have been received electronically and not printed out by putative class members, these members would not have been damaged by the use of "ink, toner[,] or paper or interfere[nce]" with their phone lines. (*Id.* at PageID 5994–95.)

---

[5] Amedisys's argument regarding the potential difficulties of the EBR defense is more properly addressed when considering the predominance requirement of Fed. R. Civ. P. 23(b). *See Sandusky*, 863 F.3d at 467–70 (considering a similar argument under the predominance requirement).

Here again, Amedisys's challenge misses the mark. The requirements of Rule 23(a) apply to the claims or defenses of the class representatives, not the defendants to the action. Defendant highlights information that would give rise to its own EBR affirmative defense. *See Weinberg v. Insituform Technologies, Inc.*, 93–2742 G/BRO, 1995 WL 368002, at *3 (W.D. Tenn. Apr. 7, 1995) ("The typicality retirement is a safeguard against interclass conflicts, ensuring that the interests or the class members will be fairly and adequately protected in their absence.") Likewise, Amedisys's argument regarding the recipients of electronic faxes has little to do with the typicality of the course of conduct that gave rise to the claims and, instead, attacks the claims themselves.[6] Because Plaintiff has demonstrated that its claims and the claims of the putative class members are based upon similar facsimile broadcasts, it has established the typicality element.

*(4) Adequacy*

Finally, Rule 23(a) requires a demonstration that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *Am. Med. Sys.*, 75 F.3d at 1083 (citing *Hansberry v. Lee*, 311 U.S. 32 (1940); *Smith v. Babcock*, 19 F.3d 257, 264 n.13 (6th Cir. 1994); 1 Newberg & Conte, *supra*, § 3.21, at 3–125). There are two criteria that must be met in order to satisfy adequacy: "(1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."

---

[6] Although Defendant has identified a case in the Middle District of Florida in which the court stayed a similar action pending the resolution of this very question, *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 2018 WL 2455301, at *1 (M.D. Fla. June 1, 2018), Amedisys has not requested such a stay here. Furthermore, the mere suggestion that the law may not apply to such a scenario absent any supporting authority dissuades the Court from considering the issue in its present procedural posture. In any event, the record does not make clear that potential class members would have received the advertisements in this manner.

*Senter*, 532 F.2d at 525 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973); 3B James W. Moore, *Federal Practice* ¶ 23.07[2] (2d ed. 1974)). "The first criterion . . . requires that there be no antagonism of interest or conflict of interest between the representative plaintiffs and the other members of the class they seek to represent. The second criterion inquires into the competency of counsel." *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 80 (M.D. Tenn. Jan. 14, 2004) (citing *Am. Med. Sys.*, 75 F.3d at 1083).

Advanced asserts that its "interests are completely aligned with the proposed Class in that all have been treated identically and there has been no showing of either an actual or potential conflict between Plaintiff and the members of the putative class." (D.E. 61-1 at PageID 453 (citing D.E. 61-5, Ex. 9 to the instant motion, the declaration of its president, Shannon Bone, affirming this statement).) Plaintiff also maintains that its counsel, the law firms Anderson + Wanca and Neal & Harwell, PLC, are qualified to handle the case and have submitted resumes that outline their depth of experience in business litigation and class action matters. (*Id.* (citing D.E. 61-5, Ex. 10–11).) Finally, Advanced attests that it has and will continue to vigorously prosecute the action. (*Id.* at PageID 454.) In support, Plaintiff provides that it has already carried out depositions, generated a report from a hired expert, and participated in written discovery. (*Id.*)

To dispute Plaintiff's adequacy as class representative, Defendant chiefly relies on its various arguments made elsewhere in its response. (D.E. 67 at PageID 5995–96.) Amedisys avers that Advanced's failure to previously address these arguments—e.g., that Plaintiff or other class members may have an EBR with Defendant, whether Advanced has standing to sue—demonstrates the inadequacy. Amedisys additionally assails Plaintiff's use of an expert to generate a report, which cost $18,000.

The Court finds that Advanced has established its adequacy as class representative. Defendant can only point to differences that amount to speculation, and there does not appear to be any conflicts between Plaintiff and the unnamed parties contained in the fax record. Furthermore, the Court cannot accept Amedisys's argument that Advanced should have somehow anticipated every argument Defendant had made and briefed those issues. Were the Court to do so, Amedisys could just as easily have contended that the extra pages would have constituted waste of time and money. This is an impossible standard, which Defendant cites no authority to support.[7] Counsels' professed familiarity with class actions and the TCPA and their competent work thus far in the case demonstrates their adequacy for this action.

*Certification Under Fed. R. Civ. P. 23(b)*

In its motion, Plaintiff seeks to certify its class under Fed. R. Civ. P. 23(b)(3). This Rule is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, *and* that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). These two requirements have come to be known as predominance and superiority. In resolving questions of predominance and superiority, the Court is to consider:

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

---

[7] The Court also observes that Biggerstaff, Plaintiff's expert, has generated a similar report in at least one other case in the circuit, demonstrating that his contribution may not be as meaningless as Defendant indicates. *See Am. Copper & Brass, Inc.*, 757 F.3d at 543 (affirming a district court's certification of a class in a TCPA case where the plaintiff utilized Biggerstaff's expertise).

(D) the likely difficulties in managing a class action.

*Id.* Predominance is established by demonstrating that a common question "is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). A question is common if it "can be proved through evidence common to the class." *In re Whirlpool Corp.*, 722 F.3d at 858 (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S. Ct. 1184, 1195–96 (2013)); *see also Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124–25 (6th Cir. 2016) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)) ("[T]o satisfy the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."). Plaintiffs need not, however, "prove that each element of a claim can be established by classwide proof." *Bridging Cmtys. Inc.*, 843 F.3d at 1124 (quoting *In re Whirlpool Corp.*, 722 F.3d at 858); *Amgen Inc.*, 568 U.S. at 469.

For example, the Sixth Circuit has "recognized repeatedly that 'the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Bridging Cmtys. Inc.*, 843 F.3d at 1125 (quoting *Young*, 693 F.3d at 544); *see also id.* at 1126 (quoting *Smilow v. Sw. Bell. Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)) ("Even where defendants point to some evidence that a defense will indeed apply to some class members, . . . courts routinely grant certification because 'Rule 23(b)(3) requires merely that common issues predominate, *not that all issues be common to the class.*'") (emphasis added). "Predominance is usually decided on the question of liability, so that if the liability issue is common to the class, common questions are held to predominate over individual ones." *Ham v. Swift Transp. Co., Inc.*, 275 F.R.D. 475, 483 (W.D. Tenn. July 1, 2011) (quoting

*Weinberg v. Insituform Techs., Inc.*, 1995 WL 368002, at \*7 (W.D. Tenn. Apr. 7, 1995)) (citing *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)). Typically, "[t]he predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 307 (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996)). Superiority, on the other hand, "compels the court to balance the merits of a class action in terms of fairness and efficiency." *Ham*, 275 F.R.D. at 488 (quoting *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 216 (S.D. Ohio 2003)) (citing *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 680–81 (N.D. Ohio 1995)).

*(1) Predominance*

Advanced asserts that "there are no individualized issues present" in this case, "because [its] claims are identical to the claims of the other class members." (D.E. 61-1 at PageID 455.) Plaintiff states that the issues of "whether the faxes are advertisements, whether Defendant is a sender, and whether the violations were willful or knowing" are at the heart of the case and will lead to its ultimate resolution. (D.E. 71 at PageID 6342 (internal quotation marks omitted).) Advanced further points out that, because the faxes at issue were copies of one another, the resolution of the controversy regarding the opt-out notice will resolve the case as to the EBR issue and damages will require a simple calculation, as they are statutorily defined. (*Id.*)

Conversely, Amedisys argues that other questions will predominate over the issues Plaintiff presents. Particularly, Defendant relies heavily on the notion that its EBR defense and its defense of prior express permission will require individualized inquiries as to all members of the class and would make a single trial unwieldy.

Defendant's argument is not without merit. In *Sandusky*, 863 F.3d at 467–70, the Sixth Circuit affirmed a district court's denial of class certification in a TCPA "junk fax" case where the lower court found that "questions of consent presented an individualized issue" which would "entail[] combing through hundreds of thousands of customer forms that [the defendant] had produced as evidence of consent, a recipient-by-recipient inquiry that was prohibitive of class certification." *Id.* at 467. Importantly, in that case, the defendant gathered consent forms from each customer for facsimile broadcasts, amounting to "over 450,000 pages of various forms." *Id.* at 468. Thus, "identifying these individuals would [have] require[d] manually cross-checking 450,000 potential consent forms against the 53,502 potential class members." *Id.* at 469 (internal quotation marks omitted). The presentation of such cumbersome evidence of actual consent was central to the court's finding that the class should not have been certified. *Id.* at 470 ("Because [the defendant] presented actual evidence of consent to the district court, which required the need for individualized inquiries in order to distinguish between solicited and unsolicited . . . faxes, the district court did not abuse its discretion in denying class certification."). The court made this distinction because it had held in a prior TCPA junk fax case that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)." *Id.* at 469 (quoting *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016)). The court further emphasized the lack of generalized proof regarding who received the defendant's fax because the fax logs no longer existed.[8] *Id.* at 472–73. Thus, the district court would have been forced to conduct an individualized inquiry of each class member to determine who received the fax. *Id.*

_____

[8] Although the difficulties in identifying class members appear to fall under Rule 23(b)(3)'s "implied ascertainability requirement," some courts consider this issue under the predominance prong, and other courts consider this issue under both requirements. *See generally Sandusky*, 863 F.3d at 471–72 (discussing the current circuit split on this issue in the context of the TCPA). The

In *Bridging Cmtys.*, the defendant hired a company to "fax-blast" advertisements for its business to a list of phone numbers that was proprietary to the third-party. 843 F.3d at 1122. The defendant "raised the possibility of consent to receive faxes and/or prior existing business relationships as a defense to liability under the TCPA before the district court." *Id.* at 1125. The court reversed the denial of class certification, reasoning that "[h]olding otherwise and allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance." *Id.* at 1126 (internal quotation marks omitted). As to the defense of prior consent, the court acknowledged that "in cases where . . . a sender 'obtained all of the fax recipients' fax numbers from a single purveyor of such information[,]' there exists a 'class-wide means of establishing the lack of consent . . . .'" *Id.* (quoting *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327–28 (5th Cir. 2008)) (alteration in original). The court explained that "[t]he common question in such cases is 'whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there [a]re therefore no questions of individual consent.'" *Id.* (quoting *Gene & Gene LLC*, 541 F.3d at 328) (second alteration in original).

This case presents a factual scenario that is distinguishable from both *Sandusky* and *Bridging Cmtys.*, yet it falls somewhere between the two. Unlike the defendant in *Sandusky*, where the defendant had hundreds of thousands of forms through which the factfinder would have been forced to comb, there appears to be a well-documented list from which Defendant intends to establish these defenses, *see* (D.E. 67 at PageID 5977; D.E. 67-2 at PageID 23–24 (describing

district court considered this issue under both requirements, but the Sixth Circuit declined to take a position on the matter. *Id.* at 472.

19

Amedisys's system for gathering contacts)). Furthermore, unlike *Sandusky*, the fax logs still exist in the present case and the class members can be ascertained by common proof. (D.E. 62.) Thus, while some individual inquiries may be required of the factfinder in this case, it will not be an overwhelmingly difficult task, as it would have been in *Sandusky*.

This case is likewise distinguishable from *Bridging Cmtys.*, because Amedisys has furnished more than a mere suggestion that it may have a colorable EBR defense. Defendant asserts that it has a procedure for obtaining the fax numbers to which it sends its fax advertisements: it compiles a list of customers who have either expressly consented to receive faxes or referred patients to Amedisys at least twice in a twelve-month period. (D.E. 67 at PageID 5977 (citing D.E. 67-1 ¶ 8, affidavit of Lauren Cutrer, Director of Marketing for Amedisys).) At the same time, however, Amedisys's defense of prior express permission is subject to generalized proof. Similar to the defendant in *Bridging Cmtys.*, who obtained fax numbers from a singular source, Defendant used a streamlined referral procedure to collect its fax numbers—i.e., recipients who provided Amedisys at least two referrals in the preceding twelve-month period were added to its fax list. Thus, the common question regarding consent is whether persons or entities who provided at least two referrals to Defendant in a twelve-month period indicated their consent to receive fax advertisements.[9]

Additionally, there are other common questions of law, such as whether Amedisys's nineteen faxes satisfy the TCPA's notice requirements, which can be proved through evidence common to the class because the same advertisements are at issue, and common questions of fact, such as who received Defendant's faxes, which is subject to generalized proof through presentation

---

[9] It should be noted, as the Supreme Court emphasized in *Amgen*, that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc.*, 568 U.S. at 459.

of the fax logs.  *See, e.g., Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016).  Therefore, while it is a close call, the Court finds that the issues of liability determination will predominate over the potential individual issues that may arise.[10]

*(2) Superiority*

The conclusion regarding predominance is supported by the Court's finding of superiority. Considering the small amount of damages that each individual plaintiff would be rewarded were separate trials to be conducted, there are no immediately apparent interests that each individual plaintiff would need to protect by prosecuting its claim individually.  Likewise, for purposes of efficiency and judicial economy, concentrating these claims in one forum would be desirable for all parties.  The potential for resolving inquiries regarding the consent or EBR defenses is not outweighed by these considerations.  Therefore, the Court finds that a class action is the superior method for resolving this matter.

## CONCLUSION

Because Plaintiff satisfied the threshold questions, the Rule 23(a) prerequisites, and the requirements for one of the certification avenues under Rule 23(b), Advanced's motion for class certification is hereby GRANTED.

IT IS SO ORDERED this 30th day of August 2019.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[10] Defendant outlines several other questions that it insists the Court will have to answer in addition to the consent or EBR question.  (D.E. 67 at PageID 6002.)  However, the rest of those questions have been resolved in the preceding sections of this order, thereby rendering those concerns moot.