IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ADVANCED REHAB AND MEDICAL,
P.C., individually and as the representative
of similarly situated persons,

       Plaintiff,

v.                                                                    No. 1:17-cv-01149-JDB-jay

AMEDISYS HOLDING, LLC,

       Defendant.

_____

ORDER ON DEFENDANT'S MOTION TO MODIFY CLASS DEFINITION
_____

Before the Court is the motion of Defendant, Amedisys Holding, LLC ("Amedisys"), to

modify the class definition pursuant to Federal Rule of Civil Procedure 23(c)(1)(C).  (Docket Entry

("D.E.") 87.)  Plaintiff, Advanced Rehab and Medical, P.C. ("Advanced"), submitted a response

in opposition, (D.E. 91), to which Defendant filed a reply, (D.E. 96).

On September 30, 2019, the Court granted Advanced's motion for certification of the

following class:

> All persons or entities who were successfully sent one or more faxes on or about
> the dates set forth designated:  (1) "Thanksgiving HomeHealth," sent November
> 23, 2015; (2) "Cardo Fax Feb 2016 HH," sent February 11, 2016; (3) "HH Pt
> Eligibility," sent April 28, 2016; (4) "Home Health Campaign," sent May 16, 2016;
> (5) "HH Med Management," sent June 16, 2016; (6) "HH—July 4," sent June 30,
> 2016; (7) "HH Myth and facts," sent July 14, 2016; (8) "HH Pt Eligibility," sent
> August 11, 2016; (9) "Labor Day_HH," sent September 1, 2016); (10) "HH Fall
> Prevention," sent October 13, 2016; (11) "Thanksgiving_HH," sent November 22,
> 2016; (12) "Hospice_HH," sent December 20, 2016; (13) "New Years – Home
> Health," December 28, 2016; (14) "HH Flu," sent January 12, 2017; (15) "Why
> Amed HH," March 7, 2017; (16) "HH Med Mgt.," sent April 25, 2017; (17) "Why
> Amed HH June 2017," sent June 8, 2017; (18) "HH July 4," sent June 29, 2017;
> and (19) "HH Myth and Facts," sent July 13, 2017.

(D.E. 76; D.E. 61.)   After entry of this order, on December 9, 2019, the Consumer and Governmental Affairs Bureau ("Bureau") of the Federal Communications Commission ("FCC") issued a declaratory ruling excluding "online fax services" from the definition of "telephone facsimile machine," as provided in the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, 34 F.C.C. Rcd. 11950 (CGAB Dec. 9, 2019) [hereinafter "*Amerifactors Ruling*"].   Specifically, the Bureau "ma[de] clear that an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition."  *Id.* at 11950–51 (¶ 3).

Based on the *Amerifactors Ruling*, Defendant seeks to modify the class definition to exclude "any fax recipients who received any fax(es) via an online fax service."  (D.E. 87 at PageID 6507.)  In support of its motion, Amedisys insists that both the Hobbs Act, 47 U.S.C. § 2342(1), and *Chevron* deference require application of the Bureau's interpretation to the enforcement of the TCPA.  (*Id.* at PageID 6506–07.)  In response, Plaintiff contends that the Bureau's ruling is not a "final order" subject to the Hobbs Act, as an application for review of the ruling is currently pending before the full Commission.  (D.E. 91 at PageID 6569.)  Further, Advanced avers that the TCPA's definition of "telephone facsimile machine" is unambiguous and, therefore, the Court need not defer to the Bureau's interpretation.  (*Id.* at PageID 6570–74.)

The issue presented in Defendant's motion is not as clear cut as either party believes.  In *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, the United States Supreme Court "granted certiorari to consider '[w]hether the Hobbs Act required the district court . . . to accept

the FCC's legal interpretation of the [TCPA].'"  588 U.S. ----, 139 S. Ct. 2051, 2055 (2019) (first alteration in original).  The Court, however, ultimately ruled on narrower grounds and did not answer the question presented.  *See id.* at 2058 (Kavanaugh, J., concurring).  Nevertheless, the majority did provide a two-step inquiry for determining whether the Hobbs Act requires district courts to adopt the FCC's interpretations.[1]  *Id.* at 2055–56.

The first question asks:  "what is the legal nature of the . . . FCC Order?"  *Id.* at 2055.  If the "relevant portion" of the order is "the equivalent of an 'interpretive rule,'" then "it may not be binding on a district court, and a district court therefore may not be required to adhere to it."  *Id.* An interpretive rule "simply 'advis[es] the public of the agency's construction of the statutes and rules which it administers' and lacks 'the force and effect of law.'"  *Id.* (alteration in original).  In contrast, a "legislative rule" is "'issued by an agency pursuant to statutory authority' and has the 'force and effect of law.'"  *Id.*

If the order is a legislative rule, the second inquiry is whether the party "ha[d] a 'prior' and 'adequate' opportunity to seek judicial review of the Order."  *Id.*  The Court explained that the Administrative Procedure Act ("APA") provides that "'agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement' except 'to the extent that [a] *prior, adequate, and exclusive opportunity for judicial review is provided by law*.'"  *Id.* at 2055–56 (alteration in original) (quoting 5 U.S.C. § 703).  Thus, the second question focuses on "whether the Hobbs Act's exclusive-review provision . . . afforded [the party] a 'prior' and 'adequate' opportunity for judicial review of the Order."  *Id.* at 2056.  "If the answer is 'no,' it may be that

---

[1] The Court assumed, without deciding, that the FCC's order was a "final order."  *PDR Network, LLC*, 139 S. Ct. at 2055.

the [APA] permits [the party] to challenge the validity of the Order in this enforcement proceeding even if the Order is deemed a 'legislative' rule rather than an 'interpretive' rule." *Id.*

The crux of this framework, however, rests on the assumptions that the FCC's interpretation was a "final order" subject to the Hobbs Act and that the defendant was asking the district court "to enjoin, set aside, suspend . . . or to determine the validity of" a final order of the FCC. *See id.* at 2056 (Thomas, J., concurring); *id.* at 2063–64 (Kavanaugh, J., concurring).

Concurring in the judgment, Justice Thomas opined that the Hobbs Act did not even apply to the case at bar, since "[i]nterpreting a statute does not 'determine the validity' of an agency order interpreting or implementing the statute." *Id.* at 2056. Thus, even if the FCC's order was a "final order," the case did not require the district court to "determine the validity" of the order. Similarly, Justice Kavanaugh, with whom Justices Thomas, Alito, and Gorsuch joined, expressed skepticism about the applicability of the Hobbs Act to the FCC's order. Justice Kavanaugh framed the question as "whether the Hobbs Act bars defendants in . . . enforcement actions from arguing that the agency incorrectly interpreted the statute." *Id.* at 2059. He noted that the Hobbs Act, unlike other Acts, did not "expressly preclude judicial review in subsequent enforcement actions." *Id.* at 2059–64. And given the APA's "basic presumption of judicial review," he concluded that "the appropriate default rule is to allow judicial review." *Id.* at 2061. Further, Justice Kavanaugh highlighted the distinct consequences between a "facial, pre-enforcement action" brought in the court of appeals and an enforcement action heard before a district court:

> In this context, a court "determines the validity" of [an] order only by entering a declaratory judgment that the order is valid or invalid. Critically, if a district court in an enforcement action disagrees with the agency interpretation, the district court does not issue a declaratory judgment or an injunction against the agency. Rather, the district court simply determines that the defendant is not liable under the correct interpretation of the statute. In other words, in an enforcement action, a district court does not determine the validity of the agency order.

That conclusion becomes even more apparent when we consider what ensues from the action taken by the relevant court.  If the court of appeals in a facial, pre-enforcement action determines that the order is invalid and enjoins it, the agency can no longer enforce the order.  By contrast, if the district court disagrees with the agency's interpretation in an enforcement action, that ruling does not invalidate the order and has no effect on the agency's ability to enforce the order against others.  That contrast shows that the district court does not "determine the validity" of an order when the district court agrees or disagrees with the agency interpretation in an enforcement action.

*Id.* at 2063.  In sum, four justices agreed that the Hobbs Act does not deprive a party of judicial review of an agency's interpretation in an enforcement action and that the district court is not required to accept the FCC's interpretation of the TCPA.

Neither party addressed the questions left open by the *PDR Network* Court and, since that decision, the Supreme Court has vacated a judgment of the Sixth Circuit Court of Appeals and remanded the case for further consideration in light of *PDR Network*.  *See Fulton v. Enclarity, Inc.*, 907 F.3d 948 (6th Cir. 2018), *vacated and remanded by*, 140 S. Ct. 104 (2019).

Accordingly, the Court ORDERS the parties to submit supplemental briefs on the issues before the Court, addressing:

1. Whether the Bureau's declaratory ruling is a "final order" subject to the Hobbs Act;

2. If so, whether the Bureau's ruling is a "legislative" or "interpretive" rule, and whether Plaintiff had a "prior" and "adequate" opportunity to seek judicial review; and

3. If the Bureau's ruling is not a final order or legislative rule, or if Plaintiff was not afforded a prior and adequate opportunity for judicial review, then what deference, if any, should the Court afford to the agency's interpretation.

Defendant has fourteen days from the entry of this order to submit its brief, and Plaintiff has fourteen days after service of Defendant's brief to submit its response.

IT IS SO ORDERED this 3rd day of June 2020.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE