IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ADVANCED REHAB AND MEDICAL,
P.C., individually and as the representative
of similarly situated persons,

      Plaintiff,

v.                                              No. 1:17-cv-01149-JDB-jay

AMEDISYS HOLDING, LLC,

      Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION TO MODIFY CLASS DEFINITION
_____

Before the Court is the motion of Defendant, Amedisys Holding, LLC ("Amedisys"), to modify the class definition pursuant to Federal Rule of Civil Procedure 23(c)(1)(C). (Docket Entry ("D.E.") 87.) Plaintiff, Advanced Rehab and Medical, P.C. ("Advanced"), submitted a response in opposition, (D.E. 91), to which Defendant filed a reply, (D.E. 96). On June 3, 2020, the Court ordered the parties to submit supplemental briefs addressing the United States Supreme Court's opinion in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. ----, 139 S. Ct. 2051, 2055 (2019). (D.E. 97.) As both parties have submitted their respective briefs, (D.E. 98, 99), this matter is ripe for disposition.

## BACKGROUND

The Telephone Consumer Protection Act of 1991 ("TCPA") makes it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain conditions are met. 47 U.S.C. § 227(b)(1)(C). The statute defines "telephone facsimile machine" to mean "equipment which has

the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." *Id.* § 227(a)(3).

In 2002, the Federal Communications Commission ("FCC") sought comment on, among other things, "any developing technologies, such as computerized fax servers, that might warrant revisiting the rules on unsolicited faxes" under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, FCC No. 03-153, 18 FCC Rcd. 14014, 14132 ¶ 198 (July 3, 2003) [hereinafter, "*2003 Order*"]. Some commenters "urged the Commission to clarify that the TCPA does not prohibit the transmission of unsolicited fax advertisements to fax servers and personal computers because these transmissions are not sent to a 'telephone facsimile machine,' as defined in the statute." *Id.* at 14133 ¶ 199. Others disagreed, arguing that "the TCPA only requires that the equipment have the *capacity* to transcribe text or messages onto paper, and that computer fax servers and personal computers have that capacity." *Id.* In 2003, after the notice-and-comment period, the FCC issued a final order in which it "conclude[d] that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes." *Id.* at ¶ 200. The Commission explained that "developing technologies permit one to send and receive facsimile messages in a myriad of ways" and that "a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes." *Id.* The agency further noted that "'[f]ax servers' enable multiple desktops to send and receive faxes from the same or shared telephony lines." *Id.* For these reasons, the FCC opined that "[t]he TCPA's definition of 'telephone facsimile machine' broadly applies to any equipment that has the capacity to send or receive text or images." *Id.* at ¶ 201. However, the *2003 Order* also "clarif[ied]" that

the statute's prohibition "does not extend to facsimile messages sent as email over the Internet." *Id.* at ¶ 200.

In 2009, Westfax, Inc. filed a petition with the Commission "seeking clarification of the TCPA . . . as it applies to the transmission of efaxes"; specifically, it asked "whether an efax is a fax, an email, or both" and "whether the restrictions on unsolicited fax advertisements apply to efaxes, and, if so, to what extent." *In re Westfax, Inc. Petition for Consideration and Clarification*, CG Docket Nos. 02-278, 05-338, 30 FCC Rcd. 8620, 8621–22 ¶¶ 4–5 (CGAB 2015) [hereinafter, "*Westfax Ruling*"]. "In its Petition, Westfax described an efax as 'a facsimile transmission . . . received on a fax server,' and 'in general' is 'a fax that is converted to email.'" *Id.* at 8621 ¶ 4. The petition further explained that "a document sent as a fax over a telephone line to the [recipient] becomes an efax when a fax server on the receiving end converts the fax transmission into a digital image file or PDF that is in turn sent to the recipient as an attachment to an email message." *Id.* at 8621–22 ¶ 4.

The Consumer and Governmental Affairs Bureau ("CGAB" or "Bureau") of the FCC, in August 2015, issued a declaratory ruling on Westfax's petition, "mak[ing] clear that a type of fax advertisement—an efax, a document sent as a conventional fax then converted to and delivered to a consumer as an electronic mail attachment—is covered by the consumer protections in the [TCPA]." *Id.* at 8620 ¶ 1. The agency explained that "Westfax's description makes clear that efaxes are sent as faxes over telephone lines, which satisfies the statutory requirement[s] that the communication be a fax on the originating end," as well as "a fax on the receiving end." *Id.* at 8623 ¶ 9. While the Bureau also noted that the equipment used by the efax recipients were computers attached to fax servers or modems, which fell within the TCPA's definition of "telephone facsimile machine" as interpreted by the Commission in the *2003 Order*, *id.*, its primary

focus concerned the conversion of a conventional fax advertisement to an email after it is sent. *See id.* at 8623 ¶ 10 (first emphasis added) (discussing the distinction between efaxes "*sent as a fax* over a telephone line" and faxes "*sent as an email* over the Internet"); *see also id.* (acknowledging that "the harm to recipients may be the same whether the efax begins as a fax or email," but that "the Commission ha[d] previously interpreted the TCPA to apply only to those that begin as faxes").

Two years after the *Westfax Ruling*, Amerifactors Financial Group, LLC ("Amerifactors") "filed a petition for declaratory ruling asking the Commission to clarify that faxes sent to 'online fax services' are not faxes sent to 'telephone facsimile machines.'" *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, 34 F.C.C. Rcd. 11950, 11950 ¶ 2 (CGAB 2019) [hereinafter "*Amerifactors Ruling*"]. The petition described an "online fax service" as

> a cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images and/or electronic files in digital format over telecommunications facilities that allow users to access "faxes" the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email.

*Id.* (alteration in original) (internal quotation marks omitted). On December 9, 2019, the CGAB granted the petition, concluding that "[t]o the extent an unsolicited facsimile advertisement is sent to a service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper,' the language of the TCPA and our precedent make clear that service is not a 'telephone facsimile machine' and is thus outside the scope of the statutory prohibition." *Id.* at 11952 ¶ 8. The Bureau, however, limited its "clarification" to "an analysis of online fax services, as informed by the current record," and it did

not "prejudge whether [it] would arrive at the same conclusion for other types of equipment and services." *Id.* In short, the CGAB interpreted "telephone facsimile machine" as not including the type of "online fax services" described in Amerifactors' petition.

Based on the *Amerifactors Ruling*, Defendant seeks to modify the class definition in this case to exclude "any fax recipients who received any fax(es) via an online fax service."[1] (D.E. 87 at PageID 6507.) In support of its motion, Amedisys contends that both the Hobbs Act, 47 U.S.C. § 2342(1), and *Chevron* deference require application of the Bureau's interpretation to the enforcement of the TCPA. (*Id.* at PageID 6506–07.) Plaintiff counters that the CGAB's ruling is not a "final order" subject to the Hobbs Act, since an application for review of the ruling is currently pending before the full Commission. (D.E. 91 at PageID 6569.) Advanced further avers that the TCPA's definition of "telephone facsimile machine" is unambiguous and, therefore, the Bureau's interpretation is not entitled to *Chevron* deference. (*Id.* at PageID 6570–74.)

---

[1] On September 30, 2019, the Court granted Advanced's motion for certification of the following class:

> All persons or entities who were successfully sent one or more faxes on or about the dates set forth designated: (1) "Thanksgiving HomeHealth," sent November 23, 2015; (2) "Cardo Fax Feb 2016 HH," sent February 11, 2016; (3) "HH Pt Eligibility," sent April 28, 2016; (4) "Home Health Campaign," sent May 16, 2016; (5) "HH Med Management," sent June 16, 2016; (6) "HH—July 4," sent June 30, 2016; (7) "HH Myth and facts," sent July 14, 2016; (8) "HH Pt Eligibility," sent August 11, 2016; (9) "Labor Day_HH," sent September 1, 2016); (10) "HH Fall Prevention," sent October 13, 2016; (11) "Thanksgiving_HH," sent November 22, 2016; (12) "Hospice_HH," sent December 20, 2016; (13) "New Years – Home Health," December 28, 2016; (14) "HH Flu," sent January 12, 2017; (15) "Why Amed HH," March 7, 2017; (16) "HH Med Mgt.," sent April 25, 2017; (17) "Why Amed HH June 2017," sent June 8, 2017; (18) "HH July 4," sent June 29, 2017; and (19) "HH Myth and Facts," sent July 13, 2017.

(D.E. 76; D.E. 61.)

# ANALYSIS

## A. *Hobbs Act*

"The Hobbs Act says that an appropriate court of appeals has 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . *final orders* of the [FCC] made reviewable by section 402(a) of title 47." *PDR Network*, 139 S. Ct. at 2055 (emphasis added) (quoting 28 U.S.C. § 2342(1); and citing 47 U.S.C. § 402(a) (making reviewable certain "orde[rs] of the Commission under" the Communications Act, of which the Telephone Act is part)). As in *PDR Network*, the Court is "asked to decide whether the Hobbs Act's commitment of 'exclusive jurisdiction' to the courts of appeals requires a district court in a private enforcement suit like this one to follow the [CGAB's *Amerifactors Ruling*] interpreting the [TCPA]." *Id.*

Defendant concedes that "[t]he *Amerifactors Ruling*, standing alone, is not a 'final order' subject to the Hobbs Act." (D.E. 98 at PageID 6723.) Nevertheless, Amedisys avers, without citing any supporting authority, that "when combined with the [FCC's *2003 Order*] that it clarifies," the Bureau's declaratory ruling constitutes a final order. (*Id.* at PageID 6723–24.)

Defendant's argument is unconvincing, as the Court finds no authority for the proposition that a nonfinal order becomes final simply by clarifying a previous final order. Moreover, since Amedisys "fail[ed] to offer any 'real analysis' of the argument," it has forfeited this contention. *United States v. Crumpton*, 824 F.3d 593, 619 n.7 (6th Cir. 2016); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Accordingly, the Court concludes that the Bureau's ruling is not a final order subject to the Hobbs Act.

### B. *Chevron Deference*

In *Chevron*, the United States Supreme Court established the following two-step framework for reviewing an agency's interpretation of its organic statute:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984).

As to step one, Defendant contends that Congress has not directly spoken to the precise question at issue since the TCPA does not address online fax services, "which did not exist when the Act was passed." (D.E. 96 at PageID 6713.) Plaintiff insists that Congress' intent is clear because the TCPA unambiguously defines "telephone facsimile machine." (D.E. 91 at PageID 6570–71.)

Among other things, the TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(C). The statute defines "telephone facsimile machine," in relevant part, as "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." *Id.* § 227(a)(3).

Amedisys correctly points out that the TCPA is silent on the issue of "online fax services," as this term is not mentioned in the statute. "Silence, however, does not necessarily connote ambiguity, nor does it automatically mean that a court can proceed to *Chevron* step two." *Arangure v. Whitaker*, 911 F.3d 333, 338 (6th Cir. 2015). At the same time, however, just because

Congress defined one term in the statute does not mean that it has directly spoken to the precise question at issue.  *See Gun Owners of Am. v. Barr*, 363 F. Supp. 3d 823, 831 (W.D. Mich. 2019) (concluding that Congress had not directly addressed the precise question at issue because "[a]lthough Congress defined the term 'machinegun,' it did not further define words or phrases used in that definition"); *accord Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 52 (2011) ("The statute does not define the term 'student,' and does not otherwise attend to the precise question whether medical residents are subject to FICA.").

In *Keating v. Peterson's Nelnet, LLC*, the Sixth Circuit addressed a similar issue under *Chevron*'s first step:  whether the term "call" in the TCPA included both voice calls and text messages.  615 F. App'x 365, 370 (6th Cir. 2015).  In addition to noting that the statute does not define "call," the court pointed out that "the first text message was not sent until . . . almost a full year *after* the . . . enactment of the TCPA."  *Id.*  Thus, the court concluded that "[i]t is clear that Congress did not address, or even intend to address, the treatment of text messages when considering and passing the TCPA."  *Id.*  Moreover, the Sixth Circuit has opined that "[l]anguage is ambiguous when 'to give th[e] phrase meaning requires a specific factual scenario that can give rise to two or more different meanings of the phrase.'"  *Alliance for Cmty. Media v. FCC*, 529 F.3d 763, 777 (6th Cir. 2008) (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 920 (6th Cir. 2004)) (second alteration in original).

Here, the parties dispute whether an online fax service is "equipment" that has the necessary "capacity" to constitute a telephone facsimile machine.  Congress did not define "equipment" or any of the other terms used in the definition of a telephone facsimile machine, and the ordinary definitions of those terms do not shed light on whether an online fax service is

included in that definition.[2]  Further, given that online fax services were not developed until after the enactment of the TCPA, the Court concludes that Congress has not directly spoken to the precise question at issue.

Turning to step two, "the court must next determine whether Congress has either expressly or implicitly delegated authority to the agency to fill the gap," and whether the agency's interpretation was "promulgated in the exercise of that authority." *Atrium Med. Ctr. v. HHS*, 766 F.3d 560, 566 (6th Cir. 2014) (citing *Chevron*, 467 U.S. at 843–44, and quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)).  If the agency's interpretation was not promulgated in the exercise of that authority but rather "was simply another kind of 'interpretive choice' that an agency must 'necessarily make' when applying a statute," then *Chevron* deference does not apply. *Id.* at 566–67 (quoting *Mead*, 533 U.S. at 227–28).  For example, "'interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law' and were not promulgated via notice and comment rulemaking, 'do not warrant *Chevron*-style deference.'"  *Id.* at 567 (quoting *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000)).

However, "[t]he fact that an interpretation was 'reached . . . through means less formal than "notice and comment rulemaking" does not automatically deprive that interpretation' of *Chevron* deference." *Id.* (quoting *Barnhart v. Walton*, 535 U.S. 212, 221 (2002)).  Whether such deference is warranted "depends in significant part upon the interpretive method used and the nature of the question at issue." *Id.* (quoting *Barnhart*, 535 U.S. at 222).  Additionally, courts should consider:

---

[2] For example, Webster's defines "equipment," in relevant part, as "the physical resources serving to equip a person or thing"; "the implements (as machinery or tools) used in an operation or activity"; and "all the fixed assets other than land and buildings of a business enterprise." *Equipment*, Webster's New Int'l Dictionary (3d ed. 1986); *see also Equipment*, Black's Law Dictionary (10th ed. 2014) ("The articles or implements used for a specific purpose or activity (esp. a business operation)."). This definition, as applied to telephone facsimile machines, does not help clarify whether an online fax service is the equivalent of a telephone facsimile machine.

"the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to the administration of the statute, the complexity of that administration, and the degree to which the Agency has given careful consideration to the question over a long period of time." *Id.* (quoting *Barnhart*, 535 U.S. at 222) (internal quotation marks omitted).

Defendant avers that Congress delegated authority to the FCC to promulgate binding legal rules and to interpret the provisions of the TCPA. (D.E. 96 at PageID 6712; D.E. 98 at PageID 6726 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980–81 (2005); 47 U.S.C. § 227(b)(2)).) Amedisys further asserts that the Commission delegated such rulemaking authority to the CGAB, and that the agency subdivision issued its interpretation pursuant to that authority. (D.E. 98 at PageID 6726 (citing 47 C.F.R. § 0.141).) Thus, the Bureau's interpretation is entitled to *Chevron* deference.

Plaintiff contends that Defendant's reliance on *Brand X* is misplaced, as that case considered the FCC's delegated authority under the Communications Act, 47 U.S.C. § 201(b), and not its authority under the TCPA. (D.E. 99 at PageID 6736.) Moreover, Advanced argues that "[t]he TCPA does not expressly authorize the FCC the power to 'interpret' the TCPA," but instead "directs the FCC to 'implement the requirements of [subsection (b)].'" (*Id.* at PageID 6737 (quoting 47 U.S.C. § 227(b)(2)).) In support of this position, Plaintiff points out that § 227(b)(2) explicitly grants the Commission authority to make certain exemptions to the statute's prohibitions and requires it to make certain determinations, such as "the shortest reasonable time" for the sender of a fax to comply with an opt-out request, but that the statute confers no authority to interpret its provisions. (*Id.* (citing 47 U.S.C. § 227(b)(2)(B), (b)(2)(D)(ii)).)

As noted above, Congress' delegation of authority need not be express. Indeed, the Supreme Court reiterated in *Mead* that

> Congress not only engages in express delegation of specific interpretive authority, but that "[s]ometimes the legislative delegation to an agency on a particular question is implicit."  Congress . . . may not have expressly delegated authority or responsibility to implement a particular provision or fill a particular gap.  Yet it can still be apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law, even one about which "Congress did not actually have an intent" as to a particular result.

*Mead*, 533 U.S. at 229 (quoting *Chevron*, 467 U.S. at 844–45).  Thus, Plaintiff's assertion that the FCC and the CGAB lack authority to interpret the TCPA because Congress did not *expressly* delegate such authority is unconvincing.  Section 227(b)(2) broadly authorizes the Commission to "prescribe regulations to implement the requirements of [subsection (b)]."  47 U.S.C. § 227(b)(2); *accord Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) ("Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA.").  This is similar to the scope of authority analyzed in *Brand X*, which provided that the Commission may "prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions" of the Communications Act.  545 U.S. at 980 (quoting 47 U.S.C. § 201(b)).  *Cf. Gonzales v. Oregon*, 546 U.S. 243, 259 (2006).  That § 227(b)(2) further authorizes the FCC to make certain exemptions and requires it to promulgate certain rules does not take away from Congress' general delegation of authority.[3]

---

[3] *See Weitzner v. Iridex Corp.*, 2006 WL 1851441, 2006 U.S. Dist. LEXIS 44317, at *22–24 (E.D.N.Y. June 29, 2006) ("Subsection 227(b)(2) of the TCPA specifically provides that the FCC 'shall prescribe regulations to implement the requirements of this subsection.'  47 U.S.C. § 227(b)(2).  This subsection refers to the prohibitions set forth in 47 U.S.C. § 227(b)(1).  Plaintiff contends that because this provision of the statute sets forth three specific things that the FCC 'shall' or 'may' do in implementing the requirements of subsection (b)(1), the FCC is therefore limited to prescribing rules and regulations only in these three areas. . . . Here, the FCC interpreted the language of 47 U.S.C. § 227(b)(2) as authorizing it to make rules respecting all of subsection (1), including Section 227(b)(1)(C), dealing with facsimile advertisements. . . . [T]he FCC's conclusion that the language in Section 227(b)(2) authorized it to make rules with respect to

Moreover, consideration of the interpretive method used, the nature of the question at issue, and the *Barnhart* factors support the conclusion that Congress delegated the necessary authority in this case.  The CGAB's interpretation is the result of notice-and-comment rulemaking.  *See Amerifactors Ruling*, 34 FCC Rcd. at 11951 ¶ 7 n.14 (citing *Consumer and Governmental Affairs Bureau Seeks Comment on Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling Under the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 02-278, 05-338, Public Notice, 32 FCC Rcd. 5667 (2017)).  Although its ruling was not published in the Federal Register, the interpretive method employed by the Bureau was far more formal than interpretations contained in opinion letters, policy statements, agency manuals, and enforcement guidelines, which "are beyond the *Chevron* pale."  *Mead*, 533 U.S. at 234; *cf. Atrium Med. Ctr.*, 766 F.3d at 572 ("That the portions of the [Provider Reimbursement Manual] used in the wage index are effectively subject to notice and comment procedures should tend towards applying *Chevron* rather than *Skidmore*.").

Additionally, the issue here—whether an online fax service is "equipment" that has the necessary "capacity" to be considered a telephone facsimile machine—is precisely the sort of interstitial question that favors deference to the agency's interpretation.  And the rapid advancements in, and complexity of, modern technology, particularly with respect to new means of communication, speaks directly to the CGAB's expertise in the area of telecommunications.[4]

---

facsimile advertisements is at least a permissible construction and is entitled to *Chevron* deference.").

    [4] *See Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 517 n.6 (E.D. Wisc. 2014) (quoting Michael O'Reilly, *TCPA: It is Time to Provide Clarity*, Official FCC Blog, http://www.fcc.gov/blog/tcpa-it-time-provide-clarity (Mar. 25, 2014)) ("Over time, as the FCC and the courts have interpreted the TCPA, business models and ways of communicating with consumers have also changed.  As a result, the rules have become complex and unclear.  Indeed,

Indeed, the Commission addressed this issue before in its 2003 Order, where it sought comment on "any developing technologies, such as computerized fax servers." *2003 Order*, 18 FCC Rcd. at 14132 ¶ 198.  Further, whether an online fax service falls within the definition of a telephone facsimile machine is undoubtedly important to the administration of the TCPA, as the sender of an unsolicited fax advertisement is liable only if it sends the fax *to* a telephone facsimile machine. *See* 47 U.S.C. § 227(b)(1)(C).

Accordingly, the Court concludes that Congress, at a minimum, implicitly delegated authority to the agency to interpret the provisions of the TCPA.  And pursuant to its authority, the Commission delegated to the Bureau authority to engage in rulemaking and adjudication "in matters pertaining to consumers and governmental affairs."  47 C.F.R. § 0.141; *see also* 47 U.S.C. § 155(c)(1) (empowering the FCC to "delegate any of its functions," with certain exceptions not relevant here).  The CGAB, in turn, issued its interpretation in the exercise of its rulemaking authority.  *See Amerifactors Ruling*, 34 FCC Rcd. at 11954 ¶ 17 ("Ordering Clauses").  The Court therefore concludes that *Chevron* deference applies to the Bureau's interpretation.

Nevertheless, Advanced submits that the *Amerifactors Ruling* warrants no deference because it is an interpretive rule that lacks the force and effect of law, as it merely explains the meaning of a statutory term and clarifies the scope of an existing obligation.  (D.E. 99 at PageID 6735–36.)  This argument was rejected by the Sixth Circuit in *Leyse v. Clear Channel Broad., Inc.*, where the court explained that "the key inquiry is whether Congress delegated the necessary authority, not whether the rule is termed interpretive or legislative."  545 F. App'x 444, 453 (6th

---

the problems caused by this lack of clarity are evidenced by an increasing number of TCPA-related lawsuits and a growing backlog of petitions pending at the FCC.").

Cir. 2013); *see also Barnhart*, 535 U.S. at 221–22 (declining to employ the "force of law" distinction enunciated in *Mead*).

Plaintiff also argues that *Chevron* deference should not apply to the Bureau's interpretation since it "completely ignored" and is "blatantly inconsistent with" the *2003 Order* and the *Westfax Ruling*. (D.E. 99 at PageID 6741–42.)  The Court disagrees.  "Agency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework.  Unexplained inconsistency is, at most, a reason for holding an interpretation to be an arbitrary and capricious change from agency practice under the Administrative Procedure Act."  *Brand X*, 545 U.S. at 981 (citation omitted).  In *Amerifactors*, the CGAB specifically noted that the *Westfax Ruling* was not controlling since that decision had "assumed that the 'efax' in question was sent to a computer with an attached modem that had the capacity to print the fax."  *Amerifactors Ruling*, 34 FCC Rcd. at 11954 ¶ 15.  Moreover, the Bureau's interpretation is not inconsistent with the *2003 Order*.  In the *2003 Order*, the FCC concluded that "computerized fax servers" and "personal computers equipped with, or attached to, modems" are equipment that fall within the statute's definition of a telephone facsimile machine; whereas in the *Amerifactors Ruling*, the Bureau determined that an "online fax service" itself is not such equipment.  *Compare 2003 TCPA Order*, 18 FCC Rcd. at 14133 ¶ 200, *with Amerifactors Ruling*, 34 FCC Rcd. at 11953 ¶ 11.

Since *Chevron* deference applies, the Court must next determine whether the agency's construction of the statute is a reasonable interpretation.[5]  *See Brand X*, 545 U.S. at 980 ("If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron*

---

[5] The Court notes that even if *Chevron* deference did not apply, the Bureau's interpretation would be entitled to deference under *Skidmore*, as "the agency has 'specialized experience and broader investigations and information available' than those available to the judiciary" and, as explained below, the validity of its reasoning is sound.  *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 478, 480 (6th Cir. 2015).

requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation."). The Court finds that the CGAB's interpretation is reasonable.

The Bureau first looked to the plain language of the statute and correctly noted that the TCPA's prohibition on unsolicited fax advertisements applies only to faxes *sent from* a "telephone facsimile machine," a "computer," or any "other device" *to* a "telephone facsimile machine." *Amerifactors Ruling*, 34 FCC Rcd. at 11952 ¶ 10 (citing 47 U.S.C. § 227(b)(1)(C)). The agency then addressed the characteristics of an online fax service and explained that "online fax services hold inbound faxes in digital form on a cloud-based server, where the user accesses the document via the online portal or via an email attachment and has the option to view, delete, or print them as desired." *Id.* at 11953 ¶ 13. The CGAB also noted that "an online fax service *cannot itself print a fax—the user* of an online fax service *must connect his or her own equipment in order to do so*." *Id.* at ¶ 11 (emphasis added). Because the statutory definition of a telephone facsimile machine requires the equipment to have the capacity "to transcribe text or images (or both) . . . onto paper," 47 U.S.C. § 227(a)(3), the Bureau concluded that online fax services do not fall within the TCPA's definition of a telephone facsimile machine but instead "are more accurately characterized as faxes sent to a 'computer' or 'other device.'" *Amerifactors Ruling*, 34 FCC Rcd. at 11953 ¶ 11, 11954 ¶ 13. Since the agency's construction of the statute is reasonable, the Court is required to accept it. Accordingly, any fax(es) sent to an online fax service is not "an unsolicited facsimile advertisement" prohibited by the TCPA.

**CONCLUSION**

For the reasons provided above, the Court GRANTS Defendant's motion to modify the class definition to exclude any fax recipients who received any fax(es) via an "online fax service," as described in the *Amerifactors Ruling*.[6]

IT IS SO ORDERED this 24th day of August 2020.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE

---

[6] Because the Bureau limited its ruling to online fax services as described in the *Amerifactors Petition*, and did not "prejudge whether [it] would arrive at the same conclusion for other types of equipment and services," the Court's order excludes only those recipients who received faxes via the same type of online fax service.